# COURT OF COMMON PLEAS.

## Isaac Sulzbacher *et al.* agt. Patrick Dickie.

*Respondeat superior — when owner or master responsible for act of his agent or servant.*

Where the owner of a building enters into a contract with a builder to put a new roof upon his building at a stipulated price, and during the time of putting on such new roof and after the removal of the old one, while the building is in an exposed condition, the goods of a tenant or sub-tenant is damaged by rain, the owner is answerable for the damage and not the contractor.

The owner of a building has a right to put on a new roof to prevent his building going to ruin, a landlord having the right during the tenancy to enter and make such permanent repairs as are essential to prevent waste and indispensable to the due protection of his reversionary interest.

But where a house is in the occupation of tenants or sub-tenants, the landlord or owner is bound, in the exercise of this right, to see that all reasonable care and skill is exercised in the removal of the old and in the putting on of the new roof, to prevent injury by the elements to those who are in the occupation of the house.

Having made a contract with a builder to put on a new roof for a specific sum, he should either have provided by that contract that the builder should do all that was requisite and necessary to protect the inmates whilst the roof was in the process of construction, unless that duty, on the part of the contractor, was implied by the contract, or else take such means as were necessary himself.

Where the act undertaken is one from its very character either a nuisance or one dangerous to others, the person undertaking it is not released from responsibility to any person thereby injured, although he has entered into a contract with some person to perform it, and the injury has occurred through the negligence of the latter.

*General Term, May,* 1876.

*Before* Daly, *Ch. J.,* Robinson *and* Van Brunt, *JJ.*

THIS action was brought to recover damages for the loss and destruction of paper, stock and boxes, caused by a heavy fall of rain on the night of July 25th and 26th, 1872, whilst the defendant, Dickie, was engaged in putting on a new roof on his premises No. 144 Chamber street, New York city, the upper floors of which were occupied by plaintiffs.

The defendant, Dickie, was the owner of the premises, Delamater, Cummings & Windsor were his tenants, and the plaintiffs were sub-tenants of the latter under a verbal lease for one year.

On the 12th day of July, 1872, the roof leaked and the plaintiffs notified their landlords, Delamater, Cummings & Windsor of that fact, and to have it repaired, who said they would notify their landlord, the defendant, Dickie, and would have it repaired.

The lease between defendant, Dickie, and his tenants Delamater, Cummings & Windsor, contained a covenant to repair, but the roof requiring permanent repairs, the defendant, Dickie, put a new roof on the premises.

Dickie employed one Miller to do the work, who acted and did the work so unskillfully, carelessly and negligently, that on the night of July 25th and 26th, 1872, the roof was left in an open condition, and the goods of the plaintiffs being left exposed to the weather, a heavy rain fell upon them and caused damage and loss of $500 to the plaintiffs.

The action was tried on the 14th day of January, 1873, in the marine court, before justice SPAULDING and a jury.

*Henry Nicoll, Esq.*, counsel for the defendant, Dickie, on the foregoing facts, moved to dismiss the complaint on the grounds : *First.* That the defendant, Dickie, had made a contract with Miller at a stipulated price to put on the new roof, and that the contractor Miller and not the defendant, Dickie, was liable ; *second,* that being a mere gratuitous act on the part of defendant, Dickie, he ought not to be held liable. The justice dismissed the complaint, and the plaintiffs appealed to the marine court general term, where the appeal was argued

before chief justice SHEA and ALKER and GROSS, JJ., and the judgment affirmed, Judge GROSS dissenting. The plaintiffs then appealed to the general term of the court of common pleas.

*George F. Langbein,* counsel for the plaintiffs, appellants, made and argued the following points in contending that the justice erred in dismissing the complaint:

I. The reasons for the landlord's liability, applicable to a case of this kind, appear in some of the earlier decisons.

If the injury result from the negligence of the owner either in constructing or upholding the demised premises, he is liable and cannot by letting divest himself of such liability (*Eakin* agt. *Brown,* 1 *E. D. Smith Rep., pp.* 36, 43 *and* 44).

II. The owner of real estate is responsible for the negligent acts of persons employed in making erections upon it for his benefit, though the relation of master and servant does not exist between such owner and the person employed (*Per* WALWORTH, *chancellor, and* HAND, *senator ; The Mayor of N. Y.* agt. *Bailey,* 2 *Denio,* 434 ; HARRIS, *J., in Gardner* agt. *Heartt,* 2 *Barb,* 165 ; *Norton* agt. *Wiswall,* 26 *Barb., p.* 624).

III. Again — " Persons contracting with the owner of lots to build a block of houses thereon, who make a sub-contract with another to make all the necessary excavations, by digging the ground, blasting the rock, &c., the latter stipulating to guard against accidents by proper precautions, and to make good all damages, are liable for an injury sustained by an individual who falls into an excavation in the sidewalk, through the negligence of the sub-contractor or his servants, in not having the same properly protected " (*Creed* agt. *Hartmann,* 29 N. Y. [2 *Tiff.*], 591).

IV. Looking at this case in the light that leaving the roof exposed was a nuisance, and that the defendant, Dickie, as owner, was liable on that ground ; what is a nuisance ? "Any thing that unlawfully worketh hurt, or inconvenience or

Sulzbacher agt. Dickie.

damage. A private nuisance is any thing done to the hurt or annoyance of the lands, tenements or hereditaments of another. If a thing is calculated to interfere with the comfortable enjoyment of a man's house, it is a nuisance " (*Bouvier's Law Dict.*).

The owner of the land is liable where the injury complained of has been occasioned by a nuisance, which the owner of the real estate has suffered upon the premises (*Blake* agt. *Ferris,* 5 *N. Y., at page* 64).

In the case of *Chicago City* agt. *Robbins* (2 *Black's Sup. Ct. U. S. Reps.*), decided December, 1862, justice DAVIS, at page 424, says: " If an area is left open, it is dangerous, is a nuisance, and can be abated," and cites *Dygett* agt. *Schenck* (23 *Wend.*, 446); *Congreve* agt. *Morgan* (18 *N. Y.*, 84); *Storrs* agt. *City of Utica* (17 *N. Y.,* 108); *Coapland* agt. *Hardingham* (3 *Campbell,* 398).

The same judge says at page 426: " If the owner of real estate suffer a nuisance to be created, or continued, by another, on or adjacent to his premises, in a prosecution of a business for his benefit, when he has the power to prevent, or abate the nuisance, he is liable for an injury resulting therefrom to third persons," citing *Clark* agt. *Fry* (8 *Ohio State Reps.,* 359); *Ellis* agt. *Sheffield Gas Consumers' Co.* (2 *Ellis & Black.,* 75, *Eng. Com. L. Rep., p.* 767).

Lord CAMPBELL said in *Ellis* agt. *Sheffield Gas Cons. Co.* (2 *Ellis & B.,* 667): " It would be monstrous if the party causing another to do a thing were exempted from liability for that act merely because there was a contract between him and the person immediately causing the act to be done."

The same point was decided in *Congreve* agt. *Morgan* (5 *Duer,* 495; *affirmed, sub nom. Congreve* agt. *Smith,* 18 *N. Y.,* 79), and in *Creed* agt. *Hartmann* (29 *N. Y.,* 591).

Upon the trial below the defendant's counsel relied, as he no doubt now relies, upon the leading case of *Blake* agt. *Ferris* (5 *N. Y.* [1 *Seld.*], 48); but this case has been severely criticised and questioned by the court which made it, and is

not applicable to the pleadings and proof in this case if it is a correct principle of law this day. In that case the principle was decided, that unless the relation of master and servant exists between the party charged and the person who has done the injury, the act of the latter creates no liability in the other. The person employing the contractor was held not liable to third persons for the want of proper guards to a sewer which the contractor dug in a public street. It was assumed that it was the duty of the contractor to place such guards around the excavation. So in this case the proof being that the roofer had turned up the old roof and rolled up the tin, leaving the bare boards exposed to the weather, the defendant's counsel and the court erroneously assumed it was the duty of the contractor to protect the roof and the goods of the plaintiffs and other tenants from damage by the elements and from thieves.

But in cases later than *Blake* agt. *Ferris,* in the case of the *City of Buffalo* agt. *Halloway* (7 *N. Y.,* 493), it was held that in the absence of positive stipulations to that effect the contractor owes no such duty to his employer, whatever he may owe to third persons. The correctness of the actual decision in *Blake* agt. *Ferris* has therefore been questioned in the court which made it, and with justice. The court of appeals, in the case of *Storrs* agt. *The City of Utica* (17 *N. Y.* [3 *Smith*], 104), goes still further, and the case of *Blake* agt. *Ferris* is fully criticised by judge COMSTOCK (*See head-note and especially pages* 107, 108, 109). There is no proof in this case that the contract of Dickie with Miller, the roofer, called for any guards for accidents, or for covering up the roof at night, or while not at work, to guard against rain storms. Miller was not bound to Dickie to cover the roof at night, he was to put on a new roof. It was a duty which Dickie owed to his tenants to see that the roof was covered at night, and he should have made a contract to embrace this or see that it was done. Not having done so, he neglected and violated a duty he owed to those who were injured, and

he is liable. The accident was not wholly caused by Miller, the roofer, or his servants, but by the neglect and violation of a duty due from and owing by the defendant, the land-lord, to his tenants (*See cases Nelson* agt. *The Vermont and Canada R. R. Co.*, 26 *Vermont Rep.*, 717; *and criticised in Norton* agt. *Wiswall*, 26 *Barb.*, *p.* 626; *Hutson* agt. *The Mayor of N. Y.*, 5 *Seld.*, 163, *criticised in Ibid).*

It was the duty of the defendant, Dickie, to make provisions to protect plaintiffs when he made the contract with Miller (*See Cook* agt. *President*, &c., 1 *Hilt.*, 436).

In the practical application of the general rule exempting owners from liability for contractors' negligence, the consid-eration that if the injury complained of is the consequence of the neglect of a duty which was incumbent upon the per-son for whose benefit the work was done, and not upon the contractor, is often overlooked. In such a case the existence of the contract is no defense to the employer (*Sher. & Red. on Neg.* [2d ed.], *p.* 105).

The doing of the work was itself dangerous to the prop-erty of plaintiffs. The landlord did expose the property of plaintiffs because the contractor was employed to put on a new roof, the doing of which must necessarily expose the property. He could not put on a new roof without exposing the roof to the weather, nor could the roof be put on in one day. Before he could put on a new roof he must tear up the old one and thus expose the property of plaintiffs to damage. Leaving the roof exposed was a necessary conse-quence of putting on a new roof.

The owner of the building was under an obligation to the plaintiff as a tenant, not to do or suffer any thing to be done which might expose the tenant to damage or injury from the elements or otherwise. The danger in this case arose from the very nature of the improvement. The landlord first determined that the roof could not be repaired, but that the house should be unroofed and a new roof put on, and then employed his own contractor. The performance of the work

necessarily exposed the plaintiffs' property to injury from the elements, and they had a right to suppose they were protected (*Storrs* agt. *City of Utica*, 17 *N. Y.*, 104; *Stevens* agt. *Armstrong*, 2 *Seld.*, 436; *City of Buffalo* agt. *Holloway*, 3 *Seld.*, 436; *Mayor of N. Y.* agt. *Bailey*, 2 *Denio*, 442; *Congreve* agt. *Morgan*, 5 *Duer*, 495).

In this case it can be said, as said in *Sher. & Red. on Negligence* (*page* 107 *and notes*), the cause of the damage was both the manner in which the work was carried on, and of the work itself; and as said in the note (*Sher. & Red. on Neg.*, *page* 107 [*2d ed.*], *and page* 111, [*3d ed.*]) : "When the injury complained of arises from the nature of the work contracted for, and not from a failure to execute it, it seems that the employer of the contractor must be liable (*Storrs* agt. *City of Utica*, 17 *N. Y.*, *p.* 104; *St. Paul* agt. *Seitz*, 3 *Minn.*, 297).

Defendant contracted with certain persons to erect a building on his lot. While the work was going on, the defendant agreed to furnish certain iron pipe necessary for it, and in consequence of his delay in furnishing it, plaintiff's premises were injured by water flowing into them. Held, that the defendant was liable, notwithstanding another person had contracted with him to furnish the pipe (*Gilbert* agt. *Beach*, 3 *Bosw.*, 445 *and* 455).

Whatever the owner is bound to do, must be done, and though he may have a remedy against his contractor for the failure of the latter to discharge his duty, strangers to the contract are still at liberty to enforce the rights conferred upon them by the law, without noticing the contract (*Sher. & Red. on Neg.* [*3d ed.*], *p.* 111; *Mersey Docks Trustees* agt. *Gibbs*, *Law Rep.*, 1 *H. L.*, 93; *Pickard* agt. *Smith*, 19 *C. B.* [*N. S.*], 48).

Thus, where a railway company is bound by law not to detain vessels more than a certain time by its draw-bridge, and owing to defects in construction, the bridge causes a longer detention, the fact that it was built by contract affords no defense

(*Hole* agt. *Sittingbourne*, &c., *R. C.*, 6 *Hurlst & N.*, 448).
And see *Allison* agt. *Western*, &c. *R. Co.* (64 *N. C.*, 382),
where the hirer of a slave was held liable for an injury caused
by gunpowder, placed by the servant of a contractor in the
room which the slave was directed by the hirer to occupy.

The following cases are also in point: *Gray* agt. *Pallen* (5
*Best & S.*, 970, 981); *Lockwood* agt. *The Mayor*, &c. (2 *Hilt.*,
66); *McClanathan* agt. *N. Y. & Oswego Midland R. R.
Co.* (1 *N. Y. Sup. Ct. Rep.* [*Thomp. & Cook*], *p.* 501).

The supreme court of the United States, in the case of
*Robbins* agt. *Chicago City* (4 *Wallace's Reps.*, *pp.* 678 *and*
679), decided December, 1866, justice CLIFFORD, delivering
the opinion of the court, says, at page 678: " The principal for
whom the work was done could not defeat the just claim of
the corporation, or of the injured party, by proving that the
work which constituted the obstruction or defect was done
by an independent contractor.     *     *     *     Lest there be a
doubt upon the subject, we again affirm the proposition.
Where the obstructions or defect, caused or created in the
street, is purely collateral to the work contracted to be done,
and is entirely the result of wrongful acts of the contractor
or his workmen, the rule is that the employer is not liable;
but when the obstruction or defect, which occasions the
injury, results directly from the acts which the contractor
agrees and is authorized to do, the person who employs the
contractor and authorizes him to do these acts, is equally
liable to the injured party (*See also, to the same effect, Hole*
agt. *Railway Co.*, 6 *Hurlstone & Norman*, 417; *Ellis* agt.
*Gas Cons. Co.*, 2 *Ellis & Blackburn*, 767; *Newton* agt.
*Ellis*, 5 *id.*, 115; *Lowell* agt. *B. & L. Railroad*, 23 *Pick-
ering*, 24; *Storrs* agt. *City of Utica*, 17 *N. Y.*, 104).

Justice DAVIS, of the supreme court of the United States,
delivering the opinion of the court in *Chicago City* agt. *Rob-
bins* (2 *Black Rep.*, *at p.* 426), says: " This area, when begun,
was a lawful work, and if properly cared for, it would always
have been lawful; but it was suffered to remain uncovered,

and thereby became a nuisance, and the owner of the lot, for whose benefit it was made, is responsible. He cannot escape liability by letting out work like this to a contractor, and shift responsibility on him if an accident occurs. It is said that Robbins did not reserve control over the contract and manner of doing the work, and is not therefore liable; but the digging this area necessarily resulted in a nuisance, was the result of the work itself, unless due care was taken to make the area safe" (*Decided December Term*, 1862; *see also the cases of Hilliard* agt. *Richardson*, 3 *Gray*, 349; *Scammon* agt. *The City of Chicago*, 25 *Ills.*, 424; *see also Taylor* agt. *Mayor, &c.*, 4 *E. D. Smith*, 559; *Sher. & Red. on Neg.* [3*d ed.*], *p.* 596, *sec.* 502; *Moody* agt. *Mayor, &c.*, 43 *Barb.*, 282; *Davenport* agt. *Ruckman*, 10 *Bosw.*, 20, 37; 16 *Abb. R.*, 34; *affirmed*, 37 *N. Y.*, 568; *Anderson* agt. *Dickie*, 1 *Rob.*, 238; 26 *How. Pr. Rep.*, 105; *Fish* agt. *Dodge*, 4 *Denio*, 311; *Rosewell* agt. *Prior*, 2 *Salk.*, 460; *per* PECKHAM, *J.*, *Benson* agt. *Sauvez*, 43 *Barb.*, 408; 19 *Abb. Pr.*, 61; per BULLER, *J.*, *Chatham* agt. *Thompson*, 4 *T. R.*, 318; *Payne* agt. *Rogers*, 2 *H. Blacks.*, 350; *Alsten* agt. *Grant*, 3 *El. & B.*, 128).

The defendant had no right to require or enforce from the roofer, under his contract with him, the covering of the roof at night, or protection to the goods of plaintiff. That was no portion of the contract. But it was his duty to the plaintiff to have made such a contract, or in default thereof, himself personally see to it, that the roof was protected or covered, while his contractor was at work (*Sher. & Red. on Negligence* [2*d ed.*], *p.* 103, [3*d ed.*], *p.* 109; *McCleary* agt. *Kent*, 3 *Duer Reps.*, 27).

Again, A. being employed to plaster a house, caused two openings to be made through the wall of the house from an adjoining stair-case. He did not cause them to be closed up when he left his work, but they continued to be used by other parties; and while they continued open, B. accidentally entered one of them, fell through the floor, and sustained injuries.

Held, on appeal to the house of lords, that A. was bound to provide against accidents only while his workmen were on the premises; that this duty, on his leaving the work, devolved on the proprietor, or the workmen next employed; and that the responsibility did not attach to the first opening· of the passage, but to the subsequent neglect (*Smith* agt. *Millne*, 2 *Dow.*, 290).

The rule as made and laid down in *Blake* agt. *Ferris* (5 *N. Y.* [1 *Seld.*], 48), is simply this: that the immediate employer of a servant is the only one responsible for his negligence, and there cannot be two superiors severally responsible. Even assuming, therefore, that all that has been said and contended for in these points against the present authority and binding force of the case of *Blake* agt. *Ferris*, is not well taken, still there is no proof whatsoever in this case, that any workman or employe of the contractor, Miller, left the roof exposed and uncovered; on the contrary, the contractor himself did so, in the absence of other proof, and as matter of law, the defendant left the roof uncovered and exposed, in consequence of his neglect and violation of the duty he owed to third persons, the tenants in the premises, in not seeing to it, or making provision with the roofer that, in putting on the new roof, the old roof should not be left exposed and uncovered to the elements while the contractor was not at work. The defendant made no contract or provision to take care of the uncovered roof while his contractor was at work; he did not so use his own property as not to injure his neighbor (*sic utere tuo alienum non laedas*), and is therefore liable.

*Edmund Randolph Robinson*, counsel for respondents, made and argued the following points: The complaint was properly dismissed, because the plaintiffs failed to show that the damage complained of was caused by the negligence of the defendant, Dickie, or his agents or servants. He was not bound to repair, nor is there a complaint of neglect to repair,

nor that an improper or unskillful person was employed to do the work. The averment is simply negligence in the performance of the work. The proof is, that the damage was occasioned by the negligent acts or omissions of workmen of the contractor, Miller. For their negligence Dickie is not liable.

It is not enough for the plaintiffs to show that the party whose negligence is complained of was performing work for the benefit of the party sought to be charged. They must show that the relation of master and servant existed between them. That a man is not liable for the negligence of a contractor or contractor's servant, is well settled law in this state.

The leading case is *Blake* agt. *Ferris* (1 *Seld.*, 48). The court in this case overruled the charge of the judge in the court below (*p.* 53), " that the person who undertakes the erection of a building, or other work, for his own benefit, is responsible for injuries to third persons, occasioned by the negligence of the servants of the builder, or the person who is actually engaged in executing the work, under an independent employment or a general contract for that purpose." The court indorsed *Milligan* agt. *Wedge* (12 *Adolphus & E.*, 737); also *Reedie* agt *Northwestern R. Co.* (4 *Welsby, Hurlstone & Gordon,* 244), in which baron ROLFE said, in substance, that " to decide that the railway company was liable would be equivalent to deciding that the contractors, whose servant did the injury, were not liable, which was a proposition which could not be maintained (*See* 1 *Seld.*, 57).

The doctrine of *Blake* agt. *Ferris* was indorsed and followed in *Stevens* agt. *Armstrong* (2 *Seld.*, 435); *City of Buffalo* agt. *Holloway* (3 *Seld.*, 493); *Pack* agt. *Mayor* (8 *N. Y.*, 222); *Kelly* agt. *Mayor* (11 *N. Y.*, 432); *Creed* agt. *Hartman* (29 *N. Y.*, 591); *McCafferty* agt. *S. D. & P. M. R. R. Co.* (*Com. of App.*, *Sept.*, 1874); see, also, 1 *Daly*, 123; 2 *E. D. Smith*, 254; 4 *Bosw.*, 140 (*criticising McCleary* agt. *Kent*, 3 *Duer*); 4 *Duer*, 426; 5 *Bosw.*, 448; 7 *Bosw.*, 511; 9 *Bosw.*, 301; 36 *Barb.*, 288; 1 *Sweeny*, 545.

In *Creed* agt. *Hartman* (29 *N. Y.*, 591), judge INGRAHAM says: "The cases of *Blake* agt. *Ferris* and *Pack* agt. *The Mayor*, *&c.*, decide that the principal was not liable for accidents to third persons occasioned by the negligence of the workmen, when the work has been contracted for to a third person to do the work at a stipulated price. The contractor in such case is not the agent of the employers, and they are not responsible for the contractor's negligence. The principle upon which these cases rest is, that the employer has no control over the men and servants employed by the contractor, and is not responsible for their negligence."

2. The evidence of the plaintiff's witnesses entirely failed to show that the relation of master and servant existed between this defendant and the party whose negligence is complained of. On the contrary, the testimony of Miller, as well as that of Dickie, plainly shows that Miller contracted for a stipulated price to do the entire job — that he was in the exercise of an independent employment — that he selected his own subordinates, and that he acted entirely without the control or supervision of this defendant.

These are precisely the tests suggested by the courts as decisive of the question, whether the relation of master and servant does or does not exist between the person for whose benefit the work is done, and the person guilty of the fault in doing the work.

The application of them to the case made out by the plaintiff, shows that the relation of superior and subordinate did *not* exist between the defendant, Dickie, and the persons whose negligence ocasioned the injury, so as to make Dickie responsible for the results of such negligence (*See Blake* agt. *Ferris*, 1 *Seld.*, 58, *and Milligan* agt. *Wedge, Ruppton* agt. *Cubett, there cited*).

DALY, *C. J.* — This action was brought to recover damages for injury to the plaintiffs' goods by rain which came through the roof of a house 144 Chambers street, owned by

the defendant Dickie and leased by him to the defendants Delamater, Cummings & Windsor, a portion of which premises were leased by them to and were occupied by the plaintiff.

The roof of the building leaking, the plaintiff applied to his landlords, Delamater, Cummings & Windsor, to have it repaired and they applied to Dickie, the owner of the building, who sent a builder to examine the roof, after which examination Dickie instructed the builder to put on a new roof to keep the house from going to ruin, which the builder agreed to do for $280.90, which sum Dickie agreed to pay for the work and the materials.

When the new roof was a little more than half tinned, and the tin was off over at least one-quarter of the roof in width and breadth, and the tin which was on was in part rolled up, some toward the front and some toward the side, it rained during the night and the water came through the parts that were exposed and damaged a large quantity of goods belonging to the plaintiff upon two upper lofts occupied by him. On the floor nearest the roof the rain came in through a great many places, and in the language of the witness it came through as if there were no roof at all.

Upon this state of facts the judge upon the trial dismissed the complaint as against the defendant Dickie. His decision was affirmed by the general term of the marine court, and the plaintiff appeals to this court. The question presented upon the appeal is, whether the owner, Dickie, is responsible to the plaintiffs for the injury sustained, he having directed the new roof to be put on; and the injury having arisen from the omission or neglect to have the roof covered in its imperfect state during the night with tar cloth or some other covering adequate to protect the property of those occupying the building from damage by rain.

In passing upon this question it will be necessary to ascertain, with some care, exactly what has been determined by the court of appeals of this state as to the application of the

rule of *respondeat superior*, in cases somewhat analogous to the present.

In *Blake* agt. *Ferris* (5 *N. Y.*, 48) the defendants had obtained permission from the corporate authority of the city of New York to build a sewer in one of the streets of the city, at their own expense, by a written permission which specified the size of the sewer, the manner of its construction, the materials of which it should be made, and providing that it should be constructed under the direction of the street commissioner, and that the defendants should cause proper guards and lights to be placed at the excavation of the drain for the prevention of accidents, and that they should be answerable for any damages or injuries which might be occasioned to persons, animals or property in any manner connected with the building of the sewer.

The street commissioner appointed one Butler, who was a builder, inspector of the work, and who, as such, had charge of the sewer; and Butler made a contract with one Gibbons to furnish the materials and build the sewer according to the specifications of the street commissioner, he, Butler, agreeing to pay, or cause to be paid to Gibbons, certain specified sums for the several kinds of work necessary to complete the sewer. The defendants knew nothing about Gibbons; they only knew Butler in the transaction, and it would appear that all they had to do in respect to the work was to pay for the sewer when constructed.

The unfinished sewer being left open and unguarded at night, the plaintiff's horses and carriage were driven into it, without any negligence or fault on the part of the plaintiff or his driver, and were injured. The action was brought to recover from the defendants compensation for the damages sustained.

The defendants' counsel, at the trial, requested the court to charge the jury that, "if the defendant did not contract for the work, or if the contractor, Gibbons, was exercising an independent employment, and the defendants did not inter-

fere with the work, that they were not liable. That, if there was an implied permission by the defendants which constituted an employment, the express act of the city authorities had a like effect, and made the city the employer paramount." This the judge refused to do, and instructed the jury that, if they were satisfied from the evidence that the sewer was undertaken by the defendants, and for their benefit, and that Butler, in making the contract for building the sewer, acted as their agent, then the defendants were responsible, under which instruction the jury found for the plaintiff.

The court of appeals held that the judge, in refusing to charge as requested, and in giving the charge that he did, erred, and upon this ground they granted a new trial.

Beyond this, it is very difficult to ascertain, by the perusal of the only opinion delivered, exactly what the court determined in this case. Judge COMSTOCK, in *Storrs* agt. *The City of Utica* (17 *N. Y.*, 106), regards the case as holding that the contractor, Butler, whose servants were guilty of neglect, in leaving the excavation without a proper inclosure or guards, to prevent accidents during the night, was liable, and that the defendants were not. He remarks that the opinion of judge MULLETT contains a correct exposition of the doctrine of *respondeat superior*, but questions whether that doctrine was applied with strict accuracy to the facts in that case. He refers to two subsequent decisions of the court of appeals, in which it was correctly and accurately applied : *Pack* agt. *The Mayor, &c., of N. Y.* (4 *Selden*, 222), where the corporation made a contract with a contractor for regulating and levelling a road, and where the injury for which the action was brought against the corporation was occasioned by negligent blasting of rocks, in the execution of that contract, by a person to whom the first contractor had sub-let the blasting of the rocks; and *Kelly* agt. *The Mayor, &c., of N. Y.*, (1 *Kern.*, 432), where the corporation contracted with a person to grade a street, and he employed another person to do

Sulzbacher agt. Dickie.

the blasting, by whose negligence a stone was thrown against the plaintiff's house. In both of these cases the injury arose, not from any negligence of the person with whom the corporation made the contract, but through the negligence of a person with whom he contracted for doing a part of the work.

In the case in which these observations are made by judge COMSTOCK (*Storrs* agt. *The City of Utica, supra*), the corporation of Utica made a contract for the excavation of a sewer in one of the streets of the city, with one Shipley, which contained no stipulation for the protection of travelers, and the excavation being left without any guards, barrier, protection or lights, the plaintiff, without any negligence on his part, drove his wagon into the sewer, and was injured.

The court held that the corporation were responsible, and that it made no difference whether they had or had not made any stipulation for the security of travelers whilst the excavation was being made. That the obligation and duty was imposed upon them of keeping the public streets in a safe condition for travel, and that they could not, by providing that the work should be executed by contract, throw off the duty imposed upon them or the responsibility incident to it. That where a corporation have a ditch dug in the public street for the construction of a sewer, although the work may be let out by contract, they still remain charged with the care and control of the street whilst the improvement is being carried on. That if danger to those using the public street arises from the nature of the improvement, and if the danger can be averted only by special precautions, such as placing guards or lighting the streets, the corporation which has authorized the work is bound to take these precautions.

It was also held in *The City of Buffalo* agt. *Holloway* (3 *Seld.*, 493), that where there was no stipulation with the corporation in the contract on the part of the contractor, who contracted to build a sewer in the street, that he would take all necessary measures to protect travelers from injury by

falling into the excavation whilst the sewer was in process of erection; that he was under no obligation to do so; that his obligation extended no farther than to execute his contract according to its terms with reasonable skill, and that he was liable to the corporation only for such injuries as it sustained by the want of the exercise of reasonable skill in the performance of the work; the corporation, and not he, being the party whose duty it was to have the excavation properly guarded for the protection of the public. It does not appear in the report of the case of *Blake* agt. *Ferris*, whether any stipulation to have the excavation properly guarded and lighted to prevent accidents was contained in the contract which Butler made with the contractor, Gibbons, on behalf of the defendants, but it is probable that it was, as the contractor, Gibbons, agreed to build the sewer in every respect in accordance with the specifications of the street commissioner; and it is stated in the opinion of judge MULLETT, in the court of appeals, that while Gibbons and his men were engaged in the execution of the contract, his servants, in his absence, without his knowledge, and in *disregard of his directions*, were guilty of the negligence which was the cause of the injury. And judge MULLETT further said, that the court below, by refusing to charge as requested, permitted the cause to go to the jury, upon the principle that the person who undertakes the erection of a building, or other work for his own benefit, is responsible for injuries to third persons occasioned by the negligence of the servants of the builder, or the person who is engaged in executing the whole work, under an independent employment, or a general contract for that purpose. This, the court held to have been erroneous, from which I infer that Gibbons had contracted not only to build the sewer according to the specifications, but also to have guards and lights at the excavation for the protection of travelers, and that having contracted to do this, the neglect of his workmen or servants to put the proper guards and lights around the excavation was negligence in the performance of the work. That that negli-

Sulzbacher agt. Dickie.

gence, on the part of the workmen employed by Gibbons in not complying with the directions, was the direct and proximate cause of the injury, which made him the party primarily answerable, and not the defendants, whose agent had contracted with him for the building of the sewer.    Judge MULLET further remarked, that the stipulation entered into between the defendants and the city, to cause proper guards and lights to be placed at the excavation, for the prevention of accidents, and to be answerable for all injuries, however beneficial it might be to the city, did not, or could not enure to the benefit of the plaintiff in that action, or strengthen his right to recover against the defendants.    From all of which I infer that the court of appeals assumed in that case, on the facts, that the injury arose from the want of proper care and skill on the part of the contractor, Gibbons, or the men employed by him, in performing what he had expressly contracted to do, and that, consequently, he was the party answerable for the injury, and not the defendants.

If *Blake* agt. *Ferris* is capable of this construction upon the facts, so far as they are indicated in the report of the case, then it rests upon the same ground, substantially or distinctive, that was recognized and applied in *Pack* agt. *The Mayor, &c., of N. Y.,* and *Kelly* agt. *The Mayor, &c., of N. Y. (supra).*

I gather, as the result of these decisions, that it has been decided in the cases reviewed, that those who have the care of the public streets, and who order a sewer or other public work to be constructed in the streets, must see to it that the public is protected by having proper guards and lights at the excavation made in the street, to prevent accidents ; and that they cannot relieve themselves of this public obligation or duty by letting the work out on contract.    That that duty is not imposed upon the contractor, unless he has expressly stipulated to do it, and that even where he has, that will not, according to judge COMSTOCK, relieve a municipal corporation from their obligation to see that it is done, and that they are

answerable to individuals for injuries arising from its omission. But where the injury is caused by the unskillful or negligent way in which the contractor or those employed by him do the work, or by his omission or neglect to do what he contracted to do, that then the contractor, and not the corporation, is the one answerable for the injury, as in *Pack* agt. *The Mayor, &c., of New York,* and *Kelly* agt. *The Mayor, &c. (supra),* and which distinction may be further illustrated by the case of *Conners* agt. *Hennessy* (112 Mass., 96), where a house, in being raised up for an addition beneath, fell upon the adjoining house, and in which it was held that the contractor, who had contracted to raise the house, was responsible for the injury, and not the owner who had made the contract with him; the party making the contract with the builder having nothing to do in such cases with the selection of the workmen, or any right after the contract is entered into, to direct or control them, or the contractor in doing the work. If the corporation had been sued in *Blake* agt. *Ferris,* then the question would have arisen, whether they were answerable, having exacted a stipulation when they gave permission for the construction of the sewer, that proper guards and lights should be placed at the excavation, to prevent accidents. But the action, in that case, was brought against the persons who were permitted to build the sewer, who were under no public obligation or duty in respect to the street, like the corporation, so that question remains undetermined.

It now becomes necessary to apply what has been thus decided to the facts of this case.

The defendant Dickie, as the owner of the building, had a right to put on a new roof, to prevent his building going to ruin, a landlord having the right, during the tenancy, to enter and make such permanent repairs as are essential to prevent waste, and indispensable to the due protection and preservation of his reversionary interest (*Taylor's Landlord and Tenant,* 174; *Proude* agt. *Hollice,* 1 *B. & C.,* 8).

But as the house was then in the occupation of his ten-

Sulzbacher agt. Dickie.

ants, and of their sub-tenants, he was bound, in the exercise of this right, to see that all reasonable care and skill was exercised in the removal of the old, and in the putting on of the new roof, to prevent injury by the elements to those who were in the occupation of the house.

Having made a contract with a builder to put on a new roof for a specific sum, he should either have provided, by that contract, that the builder should do all that was required and necessary to protect the inmates whilst the roof was in the process of construction, unless that duty, on the part of the contractor was implied by the contract, or else take such measures as were necessary himself.

It does not appear, from the evidence, that he made any such provision in his contract with the builder, or did any thing.   The builder simply agreed to put on a new roof for $280, and Dickie agreed to pay him that sum for doing so, which is all that appears in the case ; so that the injury must be regarded as having arisen from the defendant's neglect to do what was incumbent upon him, unless we can hold that it was the duty of the builder, in the due and skillful performance of the contract which he made, to protect the building during the night, or whenever it became necessary in the course of the work, by covering the roof with tarpaulin, cloths or other ordinary means employed under like circumstances, to guard against the consequences of the occurrence of rain, and I should be disposed to hold that this was incident to the due performance of such a contract, were it not for the decision above referred to of the court of appeals in *The City of Buffalo* agt. *Holloway* (*supra*).

It appears to me, that where a builder contracts to put a new roof upon an inhabited house, there is implied from the very nature of what he undertakes to do, that he will, in the prosecution of the work, adopt such precautionary measures as may be necessary to prevent injury to the property of those living in the house from the occurrence of rain. It is scarcely to be expected that the person who makes the

contract with him is to have a person constantly attending with the necessary means to cover the roof when there is indications of the approach of rain ; for a sudden shower or a heavy thunder storm may occur at any time, and so suddenly as to afford scarcely more than time to spread over the roof the necessary protection, and that such person shall go, at the close of the builder's work, every day, and cover the roof, removing the covering every morning, that the builder may proceed with his work.

It is true that this may be provided for in the contract, and imposed by its provisions upon the builder ; but I apprehend that it would not occur to the great majority of persons employing a builder to put a new roof on an inhabited house, that they would have to incorporate such a provision in the contract, or discharge this duty themselves, or, if they did not, remain at the hazard of being answerable for any injury that might occur from its omission. In the great multitude of cases I think it would be taken for granted that this would be done by the builder, as a matter of course ; that it was implied from the very nature of his undertaking, the removal of an old and the putting on of a new roof upon an inhabited house ; and that where nothing took place except an agreement on his part to do this for a certain sum, that such an obligation would be implied without being expressed, he being constantly on the spot and knowing when it would be necessary to protect the building against the effects of rain, and that he would naturally cover his work when quitting it at nightfall, in the due, careful, and I may add skillful, execution of his contract. But I feel embarrassed by the decisions of the court of appeals in *The City of Buffalo* agt. *Holloway*, as this reasoning would apply as forcibly in that case as in this.

Where one contracts to build a sewer in a public street, to do which he must make the necessary excavation in the street, the erecting of barriers around the pitfall and the putting up of lights at night for the protection of those using the street

involves but a comparatively slight amount of labor and of expense on the part of the contractor, and might well be regarded as incident to his contract. But the court of appeals have held otherwise. Holloway had contracted to build a sewer in the street, but there was no provision in his contract that he should place lights and barriers at the excavation for the protection of travelers. A recovery having been had against the city by a person who, without negligence on his part, fell into the excavation, the city in turn sued Holloway, to recover for the loss and damage to which they had been put by his omission or neglect to have barriers and lights placed at the excavation he had made, at night; but the court of appeals held that the action could not be maintained, upon the ground, that there being no stipulation to that effect in the contract, he was under no obligation to put barriers or lights at the excavation for the protection of the public; that he was answerable only to the corporation for injuries sustained by want of reasonable skill in the performance of work which he contracted for. If, in that case, he was under no obligation to do any thing but to dig the excavation and build the sewer, and might leave the excavation without guards or precautionary measures to prevent injury, then it appears to me that the builder who has simply contracted to put a new roof upon an inhabited house for a certain sum. is equally exempt from the obligation for doing any thing more than taking off the old roof and putting on a new one.

It may be, that where a contract is made to do a specific thing for a specific sum, that the contractor makes an exact estimate of the work and material requisite, and nothing more, to determine for what he will do it, and that to do in addition all that would be necessary in the prosecution of the work, for the protection of the inmates and their property, would involve an additional outlay, and consequently a greater charge than that for which he agreed to do it.

There is also great weight in the consideration that the owner who has the new roof put upon his house has it in his

power to protect himself, by providing in the contract that all that may be requisite for the protection of the inmates and their property shall be done by the builder, so that in the event of the owner's being put to any loss or damages, he may have his remedy over against the builder on the contract.

In *McCleary* agt. *Kent* (3 *Duer*, 27) the defendants, who had contracted to erect a building, employed a blacksmith, at a stipulated price, to make and finish a grating in the front area, and the opening for the grating being left open and unguarded, the plaintiff fell through and was injured. The court held that the duty was upon the defendant to have the area properly guarded against accidents during the absence of the blacksmith and his workmen, by covering or fencing the opening of the area until it was properly protected. As the defendant Dickie, in this case, employed the builder to put a new roof on the building, at a stipulated price, so the defendant in that case contracted with the blacksmith to make and put down a grating in the area of the building, at a specified price, and the party who ordered the work to be done, and not the one who did it, was held to be answerable for the omission to have precautionary measures taken to prevent injury.

In *Chicago City* agt. *Robbins* (2 *Black Rep.*, 418) the defendant Robbins made a contract for the construction of an area in the sidewalk in front of his premises. The excavation was left open and unguarded. Robbins made no provision in the contract that the contractor should provide proper guards and lights to prevent accidents; and an injury having happened it was held that Robbins was answerable for the injury.

His liability was put upon the ground, that as the digging of the area in the sidewalk was for his benefit the obligation was upon him and not upon the contractor to see that it was properly guarded to prevent injury.

The present case, I think, turns upon the question whether the adoption of such measures as were necessary to protect

the persons and property of the inmates from damage by rain was the duty of the builder, under the contract which he made, or not; for if it was not it is clear to my mind that the landlord, in the exercise of his right to put a new roof upon his building, was bound to adopt such reasonable and precautionary measures as would protect the persons and property of his tenants and their sub-tenants in the building from damage by the elements from its exposed condition during the prosecution of the work. I feel constrained, by the authorities above referred to, to hold that as no stipulation to that effect was made by the owner in the contract with the builder, that the builder was under no obligation to do any thing more than *what he contracted to do.* That the obligation was therefore upon the owner alone, and that he was answerable for the injury sustained.

If my colleagues agree in this conclusion, then the court below erred in dismissing the complaint as to Dickie, and judgment should be reversed.

ROBINSON, *J.* — The defendant Dickie, though under no obligation to repair the roof of the premises he had leased to Delamater & Co., of whom plaintiff was a sub-tenant, exercised his right as landlord to undertake to make, on his own account, permanent repairs, and to put a new roof upon the building demised. In the execution of that work he was bound to exercise all the vigilance and caution which the nature of the undertaking required. As to the occupants of the building, as tenants or sub-tenants, he was bound to use ordinary diligence in protecting them from injury naturally resulting from the character of the work undertaken. It consisted of the removal of an old and damaged roof to the building and the substitution of a new one. The process in itself was of such a character, that it naturally exposed the property of the occupants of the building to damage from the fall of rain. The undertaking, from its very nature, exacted every reasonable effort to avoid any injury likely to result

from the character of the work so undertaken. The defendant having so undertaken and engaged others to do the work of this character, was responsible not only for his own negligence, but also for that not only of his employes but of such as he had contracted with for its performance.

Where the act undertaken is one from its very character either a nuisance or one dangerous to others, the person undertaking it is not released from responsibility to any person thereby injured, although he has entered into a contract with some third person to perform it, and the injury has occurred through the negligence of the latter (*O'Rourke* agt. *Hart*, 7 *Bos.*, 514; *Chicago* agt. *Robbins*, 2 *Black.*, 511; 2 *Hilld. Torts*, 519 *to* 543; *Sher. and Red. Neg.*, sec. 79, *&c.*).

The case presented, in view of the character of the work defendant voluntarily undertook, and the damages resulting from neglect in its performance, clearly establishes his responsibility and the impropriety of the judgment appealed from.

I am of the opinion that the judgment should be reversed, new trial ordered, with costs to abide the event.