EBERSON, Respondent, v. THE CONTINENTAL INVESTMENT COMPANY, Appellant.

St· Louis Court of Appeals, March 31, 1908.

1. **LANDLORD AND TENANT: Covenant to Repair: Independent Contractor.** This case was before the court on a former appeal and the facts will be found in the opinion then rendered. [Eberson v. Continental Investment Co., 118 Mo. App. 67.]

2. ———: ———: **Negligence of Tenant.** Where a landlord was bound to protect his tenant against loss from negligence in making repairs, the duty of protection would extend to any property which the tenant might have in the building while repairs were being made. The tenant would not be any more negligent in bringing goods into the building while repairs were in progress than he would in failing to remove such as were already there.

3. ———: ———: **Independent Contractor.** The general rule is that a proprietor of a building, who lets a contract for work in repairing the building to a competent person exercising an independent employment, to be done according to the latter's

methods and free from the control of the proprietor, is not answerable for negligence in performing the work, unless the work contracted for is inherently dangerous such as would require precautions to prevent damage.

4. ————: ————: ————: **Work Inherently Dangerous.** Where a landlord, bound by his lease to make repairs, employed an independent contractor to make repairs which involved danger of damage to the tenant unless unusual precautions are observed, without requiring the contractor to take such precautions, he was liable to the tenant for damage caused by the negligence of the contractor, although the covenant to repair did not bind the landlord to answer for such damages.

5. **EVIDENCE: Refreshing Memory: Memoranda.** A witness may refresh his memory from a memorandum under two conditions; first, when the witness' memory is refreshed or revived by looking at the memorandum so that he is able to testify from memory as to the facts; second, when he has no present memory of the matter but originally knew the facts and while he knew them, made or verified the memorandum from which he testifies; it is immaterial in such case who made the memorandum provided the witness, after looking at it, has a present memory of the facts.

6. ————: ————: ————. In an action for damage to a stock of goods caused by a rain falling upon them when the roof was being repaired, where some appraisers were shown the damaged goods and made a list of them with the estimated damage, the owner of the goods, who neither went through the stock with the appraisers, nor saw what articles they noted as damaged, nor verified their list by comparison with the stock, was not a competent witness to identify the list as an accurate statement of damaged goods, neither could he use the list to refresh his memory; his testimony as to the correctness of the list was purely hearsay.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster*, Judge.

REVERSED AND REMANDED.

*Lee Sale* for appellant.

The court erred in permitting plaintiff to refresh his memory from the memorandum made by Messrs. Fritsch and Purdy. The memorandum was of facts

of which the witness had no independent recollection, and he could not therefore have testified to the facts as matters of recollection. His testimony in this respect was the veriest hearsay. Rose v. Rubeling, 24 Mo. App. 369.

*S. T. G. Smith* and *Thos. S. Meng* for respondent.

GOODE, J.—In the summer of 1902, plaintiff was a tenant of the defendant company, occupying a double brick building Nos. 901, 903 North Second Street in the city of St. Louis. The premises were used by plaintiff for a paint factory and for the sale of paints. The lease provided, among other things, that defendant should keep the building in good condition and in the event of partial destruction by fire should speedily restore it to as good condition as it was in previously. The stipulation especially included an agreement on the part of defendant to keep the roof in good order. On June 13, 1902, the roof was destroyed by fire to an extent that exposed the contents of the building, including plaintiff's paint and other merchandise, to the elements. Defendant employed a firm of contractors, Hogg & Reid, to make permanent repairs to the damaged roof. The fire had burned about an elevated skylight or cupola with glass sides, destroying that portion of the roof and a space around the skylight; perhaps a strip of roof about twelve feet long and as wide. Part of the remainder of the roof was so charred that it had to be torn away and reconstructed, and so the contractors removed a space sixty feet long and extending over the width of the building. Plaintiff swore his goods suffered very little damages from the fire, practically none; because the Salvage Corps of the City Fire Department spread tarpaulins over his property and protected it from water thrown by the fire engines. But on a previous trial he had given testi-

mony that considerable damage was sustained by the
first fire in consequence of advertising matter being
totally lost and cans being caused to rust. The goods
were on the second floor and basement, according to
the testimony, though we suppose the basement means
the ground floor. As the fire was only in the roof, the
goods were not burned and were, as said, practically
undamaged by the water used in extinguishing the fire.
It was raining heavily about the time, and plaintiff was
apprehensive his property might be injured by a rain
during the repairing of the roof. He had several con-
versations with Mr. Hogg, one of the contractors, in
regard to whether his goods would be protected during
the repair work and Mr. Hogg assured him they would
be; that all requisite precautions would be taken to
keep them from getting wet. Plaintiff's business was
never checked after the fire, but he continued to carry
it on without interruption, just as he had before, rely-
ing on the assurances of the contractor that proper
precautions would be taken to keep the rain from get-
ting into the building. During the night of June 27th,
or the morning of the 28th, there was a very heavy
and unusual fall of rain, accompanied by a high wind.
This storm overcame the measures taken by the con-
tractors to protect plaintiff's premises and the rain beat
into the building, flooding it with water and seriously
damaging plaintiff's property. The contractors had
spread tarpaulins over the roof above plaintiff's office,
which was on the second floor, but seem to have done
nothing to protect the other portions of the building,
depending on getting the roof constructed with suffi-
cient rapidity to prevent damage. One of the contract-
ors said it did not look like rain the evening before the
damage was done, and it is obvious they took the risk
of rain, but they assert plaintiff authorized this course.
There was testimony of experts tending to prove that
by taking proper precautions the rain could have been

kept out of the building and plaintiff's property saved. The cause was here on appeal before and other facts may be found in the opinion then rendered    (118 Mo. App. 67).

This action was instituted to recover for the damage done the property, on the ground of negligence on the part of defendant's agents, the contractors, in allowing the roof to remain in such a condition during the repair work that the property was exposed to the elements. The defense, besides a general denial of the averments of the answer, consisted of a plea that the contractors left a portion of the roof uncovered and unprotected with plaintiff's leave, license and consent, and that the rain which fell on his property came through the portion of the roof thus left unprotected; that plaintiff accepted the risk of whatever injury might result from leaving the roof open. There was another plea that the injury sustained was caused by plaintiff's own negligence contributing thereto, in that he allowed his property to remain in the building in such condition that it was exposed to the rain which fell on it. The issues were left to the jury which returned a verdict in plaintiff's favor for $2,725, and judgment having been entered in accordance with the verdict, defendant appealed.

After the damage occurred, plaintiff asked that the amount of loss be appraised, rather indicating at the time that he expected to hold the contractors responsible. One of defendant's officers, and also its agent who had charge of the property, were in favor of appraising the damage, and after some discussion between the parties, the contractors appointed an appraiser by the name of Fritsch and defendant appointed one named Purdy. An attempt was made to show Fritsch was appointed by defendant, but the evidence inclines the other way. It is true though that Dormitzer, defendant's agent, as well as Goodlove, its sec-

retary, wanted an appraisement and Dormitzer told
Fritsch that if neither the contractors nor the defend-
ant paid him for his services, he (Dormitzer) would
pay him. The two appraisers thus chosen went to the
premises and plaintiff indicated in a general way what
property had been damaged, pointing out portions of it.
But in the main the different articles damaged were
pointed out, not by plaintiff himself, but by his super-
intendent. Each of the appraisers made an itemized
list of the property with an assessment of the damage
done to the different classes, amounting in the aggre-
gate to $2,671. These lists were copied, or another
list made from them, in plaintiff's office and he swore
he saw the latter list prepared. When he was on the
stand testifying as to the amount of his damages, the
court, over the objection of defendant, allowed him to
refresh his memory from this list. Plaintiff testified
he had no clear recollection, independent of the list,
as to what property was damaged and had to refresh
his memory from the list. It is assigned for error that
plaintiff was permitted to use the list of damaged prop-
erty made out by the appraisers to refresh his memory.
The argument for defendant on this point is that as
plaintiff did not point out all the different articles, but
left that task mainly to his superintendent, and as
plaintiff testified he had no recollection of what goods
were injured without the aid of the list, his memory
was really a blank on the subject and his testimony con-
cerning the amount of damages was wholly hearsay—
simply a reading to the jury of the articles found by the
appraisers to have been injured, with their estimates
of the loss to each class of articles. As said, the list
from which plaintiff refreshed his memory was made up
in this way: while the appraisers were looking through
the stock, each made a memorandum of the damaged
articles and the amount of loss. They came into plain-
tiff's office, where he was, with these memoranda, and

from them they wrote out, in his presence, the memorandum which he used on the witness stand to refresh his memory. Plaintiff swore all he did was to point out to the appraisers a lot of goods that had been damaged, but his superintendent was with them more than he was. He swore further the memorandum thus made out was the only thing which enabled him to refresh his memory and he was simply testifying from the memorandum made by the appraisers as to what their conclusions were as to his damages. After thus testifying regarding his knowledge, or lack of knowledge, plaintiff took up, item by item, the articles listed on the appraisers', memorandum and testified as to the damage done to the different classes of goods. He reiterated the amounts set down by the appraisers; but supplemented this testimony on cross-examination, with the statement that they appraised the loss too low. Before proceeding further with this point, we will take up one which goes more directly to the merits.

Counsel for defendant insists his client is not liable for the damage done by rain to plaintiff's property and especially to property carried into the building after the fire. We think this question was adjudicated on the former appeal; but as it has been renewed and earnestly pressed, we have re-examined it with care. If defendant as landlord was bound to protect plaintiff as tenant against any loss from negligence in repairing the roof, the duty of protection would extend to any property which the exigencies of plaintiff's business of dealer in paints, might require him to have in the building while the roof was being repaired, and we do not see that he would be any more careless in taking goods in during the progress of the work than in failing to remove such as were already in. But suffice to say on this point, the court left it to the jury to say whether or not plaintiff was guilty of contributory negligence in placing goods in the building while the roof

was undergoing repairs. The decisions are inconsistent on the question of a landlord's liability for loss to a tenant occurring from the negligence of a contractor employed by the former to make repairs; and those cases which affirm liability disagree as to the reasons for the rule. A standard treatise cites cases said to hold the landlord, if not himself chargeable with negligence in the matter, is not answerable to the tenant for injury due to the contractor's negligence; that is to say, if the landlord procures a skilful contractor and takes due care to stipulate for the tenant's protection in letting the contract, he is not responsible. [18 Am. and Eng. Ency. Law (2 Ed.), 237.] These cases are: Blake v. Woolf (1898), 2 Q. B. Div. 426; Wiese v. Remme, 140 Mo. 289, 41 S. W. 797; Mahon v. Burns, 9 Misc. (N. Y.) 223; O'Connor v. Schneppel, 12 Misc. (N. Y.) 356; Morton v. Thurber, 85 N. Y. 550; Brennan v. Ellis, 70 Hun (N. Y.) 472. In another paragraph the same treatise says there is excellent authority for the view that the landlord, if he undertakes repairs, owes the tenant the duty of executing them carefully and cannot escape responsibility for the performance of this duty by employing a contractor; citing O'Rourke v. Fiest, 42 N. Y. App. Div. 136; s. c., 24 Misc. (N. Y.) 762. This text-work comments on the conflict of decision in the New York cases dealing with the question and might have commented on the clash of opinion in other jurisdictions. The general rule is that a proprietor, whether landlord or not, who lets a contract for work to a competent person exercising an independent employment, to be done according to the latter's methods and free from the control of the proprietor, is not answerable for negligence in performing the work, unless it is subject to unusual danger if precautions are not taken. [1 Thompson, Comm. Neg., sec. 621.] In Bush v. Steinman, 1 Bos. & Pul. 404, it was held an owner of land was liable for all injury

inflicted by the negligence of employees engaged in doing work on the land, though they were servants of an independent contractor. This decision introduced a distinction between the liability of a landowner in this regard and that of other persons who let out work to independent contractors. But the doctrine has been generally rejected and the case overruled. [1 Thompson, sec. 620.] The text-work just cited says the modern view is that if one engages a contractor to do an act which may be done in a lawful manner, and the contractor, in doing it, unecessarily commits a nuisance whereby injury results to a third person, the employer of the contractor is not liable; but that if the injury directly results from the work the contractor is engaged to do, the employer is liable equally with the contractor. [1 Thompson, sec. 645.] The learned author then proceeds in succeeding sections, to discuss the various exceptions to the general rule that a proprietor is not ordinarily responsible for the consequences of the negligence of an independent contractor. [1 Thompson, ch. XX.] We are concerned with this question only in so far as it relates to the liability of a landlord for loss resulting to his tenant in the course of repairs made by a contractor and in consequence of the latter's negligence. In Wiese v. Remme, 140 Mo. 289, a landlord had employed a contractor to build an outhouse on premises let to a tenant. In doing this work the contractor carelessly left an excavation unguarded for several months. It filled with water and a child of the tenant fell into it and was drowned. In an action against the landlord he was exonerated on the ground that the work was not of a dangerous character, did not necessarily create a nuisance and, as far as the evidence showed, had been let to a competent contractor. In Burns v. McDonald, 57 Mo. App. 599, the same rule of decision was followed. It does not appear in the opinion in said case that the action was by a tenant,

but by referring to the original record we found it was. The defendant had employed a plumber to make repairs on the premises and the plumber removed a grate from a hole in a passageway, thereby leaving the hole exposed. The tenant fell through the trap-door, was injured and sued for damages. The court held the lessor was not responsible, ranging the case under the general rule above quoted, that a party who employs a competent contractor to do work is not answerable for the contractor's negligence. Other cases holding the same doctrine in actions between landlords and tenants are those first above cited. We will state some of the grounds on which lessors have been held responsible to tenants for losses resulting from the fault of contractors employed to make repairs on the tenement. In the following cases the landlord was said to be responsible if he failed to stipulate with the contractor that the latter should protect the tenant or failed to take other measures to see care was used in the performance of the work. [Sulzbacher v. Dickie, 8 Daly (N. Y.) 659; 51 How. Pr. 500, 519; O'Rourke v. Fiest, 42 N. Y. App. Div. 136; Robbins v. Atkins, 168 Mass. 45.] The landlord is liable if the work contracted for is inherently dangerous or will necessarily cause a nuisance. [Brown v. Peate, 1 Q. B. Div. 221; Sulzbacher v. Dickie, 51 How. Pr. 500; Norwalk Gas Co. v. Norwalk, 63 Conn. 496; 1 Thompson, Neg., 648, 652 inclusive.] Sometimes the person to whom the work is let is treated as the agent of the proprietor and not as an independent contractor, and the landlord held answerable as a principal. [Worthington v. Parker, 11 Daly (N. Y.) 545.] In other cases the liability is based on the mere relationship of landlord and tenant. [Nahm v. Newspaper Co. (Ky.), 87 S. W. 296; Maloney v. Brady, 14 N. Y. Supp. 794; 18 N. Y. Supp. 757.] A lessor has been held answerable to the lessee because

130 App.—20

the former covenanted to make repairs, it being ruled that such a covenant binds the lessor to see the repairs are so made as not to injure the tenant. [Blumenthal v. Prescott, 75 N. Y. Supp. 710; Prescott v. Lecont, 82 N. Y. 411; Peerless Mfg. Co. v. Bagley, 126 Mich. 225; Lasker Real Estate Co. v. Hatcher, 28 S. W. 404.] And if the lessor undertakes to have repairs made when he has not covenanted to do so, he has been held responsible for the negligence of a contractor employed to do the work. [Wertheimer v. Sanders, 95 Wis. 573; Wilber v. Follansbee, 97 Wis. 577.] In Illinois the lessor has been held answerable for the contractor's negligence, because entire possession and control of the premises was not turned over to the latter during the progress of the work. [Glickauf v. Maurer, 75 Ill. 289; Anderson v. Moore, 108 Ill. App. 106.] The case of Wiese v. Remme, 140 Mo. and Burns v. McDonald, 57 Mo. App. supra, stand in the way of the application of some of the foregoing rules of decision. They exclude liability on the ground of the relation of lessor and lessee, or the bare fact that the lessor undertook to have repairs made, or because he did not relinquish the entire possession of the premises to the contractor, or on the theory that the contractor was the lessor's agent. But those two cases did not involve a covenant by the lessor to make repairs, or the fact that the work was necessarily dangerous to the tenant unless unusual precautions were taken. If a covenant by the lessor is looked to as ground for his liability for injury due to an independent contractor's fault, the question occurs whether a simple covenant to repair without more, can be interpreted to render the proprietor liable if he employs a competent contractor and the work requires no unusual precautions to prevent injury to the tenant. Of course the covenant may be in terms broad enough to place responsibility on the lessor by explicit words or clear inference—may bind him to answer for all

damage occurring in the course of the work. [Water
Co. v. Ware, 16 Wall. (U. S.) 566.] When the cove-
nant is not so broad, it can be argued the tenant takes
the risk of injury from the contractor's negligence, just
as he would if he, and not the lessor, let out the work.
Ordinarily a proprietor, a tenant, or any one else who
engages a contractor to repair a building, does no more
to secure safety in the performance of the work than
to let it to a competent person, and is not expected to
do more. But when the work is dangerous to a tenant,
unless unusual precautions are observed, the lessor can
be held liable—a doctrine consistent with the general
principles of the law of torts; and under the facts of
this case we need not rest our decision on any less
stable basis, even though a bare covenant to repair
may be enough to make the covenantor liable for the
default of a contractor. [1 Thompson, Neg., 652; 1
Shear. and Redf., Neg. (5 Ed.), 175; Woodman v. Rail-
road, 149 Mass. 335.] The evidence shows the repairs
to the roof in question were extensive and the weather
extremely inclement when the contract for them was
let. The work greatly endangered plaintiff's property
and precautions to protect it, according to the evidence,
would have been expensive and have gone much beyond
those commonly incident to putting on a roof. The
contractor was, of course, bound to take ordinary care
and adopt the customary expedients for the protection of
the occupants of the building. But in the present in-
stance a temporary roof and other safeguards were
necessary; and there is testimony the contractor was
not bound, according to the usual course of business,
to adopt such expedients. It would be unreasonable to
hold defendant might perform its covenant to make
these repairs which required precautions of extraordi-
nary expense and labor, by simply turning the job
over to a contractor, without stipulating the precau-
tions should be taken or agreeing to compensate the con-

tractor for the increased cost.  For this reason it is the opinion of the writer, that defendant justly may be held answerable for the loss occurring during the performance of his covenant, and without ignoring the precedents in this State or those best considered of other jurisdictions.  The same doctrine was followed in Pye v. Faxon, 156 Mass. 471, on facts not materially different from those before us.

We will now resume consideration of the alleged error of permitting the plaintiff to use the appraisers' list while testifying.  The rule regarding the use of a memorandum to refresh a witness' memory is applied under two conditions; first when the witness' memory of what occurred is either revived or refreshed by looking at the memorandum; that is to say, when he is able to testify from the memory he has of the facts; second, when he has no present memory about the matter which is either revived or refreshed from the memorandum; but originally knew the facts and while he knew them, made or verified a record of them.  [1 Wigmore, Evidence, secs. 735 to 764, inclusive, and cases cited; 1 Greenleaf, Evidence (Lewis Ed.), secs. 437, et seq.; Wharton, Evidence (3 Ed.), secs. 516, et seq.]  In the latter instance, though the witness has no independent knowledge or recollection at the time he is testifying, he may swear the memorandum is correct to his knowledge; and, according to many authorities, it may then be read to the jury as a statement, or as auxiliary to the witness's testimony [1 Wigmore, sec. 754 and citations; 1 Greenleaf, sec. 437, note 3; 1 Wharton, sec. 520.]  If a witness has a recollection which is either revived or refreshed by reading a memorandum or document, it is immaterial who made the document, or whether it was made under the supervision, or even in the presence of the witness.  The essential fact is that after looking at it, the witness has a present memory of the facts.  [1 Wigmore, sec. 758,

.et seq.; Hill v. State, 17 Wis. 675.] And perhaps this is true, too, when the witness has no present recollection, but knows he once verified the document to be used as a memorandum and found it accurate. Let us see if the list made by the appraisers and from which plaintiff in the present case testified, falls within either of the two classes of memoranda by which a witness' testimony or recollection may be assisted. It is apparent that plaintiff did not know, or claim to know, and that in the nature of things he could not know with any certainty, the list of the damaged articles put down by the appraisers was correct. This is true because he neither went through the stock with the appraisers and saw what articles they noted as damaged, nor did he afterwards take their lists and verify them by a comparison with the stock. The extent of his knowledge was that from the two lists the appraisers made while going through the stock, they afterwards made up a third list in his presence from which he testified. Hence plaintiff's testimony was incompetent to identify this list as an accurate statement of the damaged goods. His testimony was also incompetent to prove the amount of damage set opposite each item was correct, because he had not observed the different articles, either when the appraisement was made, or afterwards, for the purpose of determining whether the appraisement was correct. It follows that plaintiff's testimony was incompetent to prove the appraisers' list so as to make it evidence.

The next question is whether his state of mind regarding the damage was such that he might use the list to give him present memory, either by causing him to recollect what he had entirely forgotten, or to refresh an imperfect recollection. It is true he said the list was correct; but it is manifest from his whole testimony on the *voir dire* that he had no such knowledge. He knew, in a general way, what goods had been dam-

aged, but the appraisers' list went into figures and par-. ticulars, and he did not pretend he recollected the number of each class of articles; even after he saw the number on the written list. He had no ·knowledge of the details as they were shown on the memorandum, either from seeing the appraisers at work, or verifying their notings. Hence when he read from the memorandum, his testimony was pure hearsay as to the quantity of the respective goods which were damaged. And he did not agree with the appraisers as to the damage assessed, but said his own judgment was, the loss was greater. Yet he did not give an independent estimate of the loss, but contented himself with swearing to the estimate made by the appraisers. We do not think this was testimony in any proper sense, but a rehearsal by the witness of what the appraisers had done. Wharton, says (secs. 521, 522) an unverified copy of notes made by some one else is not admissible; citing Lovell v. Wentworth, 39 Ohio St. 614. Further, that where a person made entries in an account book as they were read to him by another from memorandum kept by the latter, within whose knowledge alone is the correctness of the charges, the entries are inadmissible to refresh the memory, unless the witness can swear he knew at the time they were true, citing Thomas v. Price, 30 Md. 483; Richmond v. Atkinson, 58 Mich. 413. And, further, that a memorandum may be used to refresh the memory although the document was not made by the witness if he saw the paper shortly after the event and verified the accuracy of the entries, citing, Coffin v. Vincent, 12 Cush. 98; Hill v. State, 17 Wis. 675. See, too, White v. Wilkinson, 12 La. Ann. 359; Bradley v. Davis, 26 Maine, 45; Railroad v. Adler, 56 Ill. 345. But it is said this testimony, even though incompetent, was not harmful to the defendant because the appraisers testified to the same facts. We cannot agree to this proposition. One of the main issues in

State ex rel. v. Duncan.

the case was the amount of loss sustained by plaintiff, and the evidence regarding the issue was extremely conflicting. It was in evidence the plaintiff had himself admitted, immediately after the loss occurred, that it would not exceed $50; yet the verdict of the jury was a trifle higher than the amount of the appraisement. The weight of the evidence relevant to the issue was involved, and it may be that the plaintiff's incompetent testimony inclined the scale in his favor.

The judgment is reversed and the cause remanded. All concur.