17  675
92  509

## HILL vs. THE STATE.

A prisoner indicted for a felony, being permitted to be present at the trial, and being in a condition to exercise the right, may voluntarily waive it, so far at least as to be temporarily absent from the room during some portion of the time the trial is in progress. ·

It is not sufficient ground for reversing a judgment on conviction of a felony, that the prisoner was absent at the time the verdict was received. The burden being upon him to show error, he should make it appear that he was deprived of the right to be present.

When the jury came in with their verdict, the prisoner was in court; but the verdict not having been reduced to writing, the jury, by direction of the court, retired and came in again with a written verdict; at which time, although the prisoner's counsel was present and had the jury polled, the prisoner himself was absent until after the verdict was received and the jury discharged, the whole period of absence being about five minutes. It does not appear whether he was in custody or on bail. *Held*, that it must be assumed upon the record that the prisoner was voluntarily absent when the verdict was received, and that the court did not err in refusing to grant him a new trial on the ground of such absence.

A witness, to refresh his memory, may use a memorandum not made by himself, where, after seeing it, he can recall the facts stated in it, and testify to them as matters of *present* recollection.

In a prosecution for larceny of treasury notes, where it appeared that certain notes, claimed to be identical with those stolen, had been found at a place where the prisoner had concealed them, it was error for the court to charge the jury that " one note was positively identified." The question of identity should have been left to the jury.

ERROR to the Circuit Court for *Clark* County.

*Hill* was indicted, tried, convicted and sentenced in said court for larceny of several U. S. treasury notes, a motion to set aside the verdict and for a new trial having been denied. · The grounds of the motion were, "1. That the verdict was rendered in said action and returned into court, and received and read by the court, and filed with the clerk, in the absence of the prisoner. 2. That the court erred in its charge to the jury in not only stating the evidence but also stating the effect thereof, and not leaving its weight to be determined by the jury." Exceptions were also taken during the trial to the admission of certain evidence, the nature of which is stated in the opinion of the court.

*Montgomery, Tyler & Wing*, for plaintiff in error:

1. All the authorities confine the use of a memorandum by a witness for the purpose of refreshing his recollection to such as were made by the witness himself, or to such as the witness can identify as being the original memorandum, containing a true statement or narrative of the facts sought to be proved. 1 Phillips on Ev., 585, C. & H.'s Notes, 170; 2 id., 916, C. & H.'s Notes, 587, and authorities there cited. In this case the witness could not even state that the memorandum was the one made at the time the notes were found. Counsel further contended that it appeared from the record that the witness *read* in evidence the description of the notes *from the memorandum*, and that this was in effect permitting the memorandum (unauthenticated as it was) to be introduced in evidence. 3. The court erred in *arguing* the case to the jury in its charge, and stating to them the effect of the evidence. 3. The verdict should have been set aside because the prisoner

was not present during *all* of the trial. Sec. 7, ch. 179, R. S.

*The Attorney General*, for the state.

*By the Court*, PAINE, J.  When the jury came in with their verdict, the prisoner was in court.  The jury were asked if they had agreed, and replied in the affirmative, but that their verdict had not been reduced to writing.  They were directed by the judge to retire, and bring in a written verdict, which they did.  When they returned, however, though the prisoner's counsel was present and had the jury polled, still he himself was out of the room, and did not return until the verdict had been received and the jury discharged.  Where he was, or what was the occasion or manner of his leaving the room, the record does not disclose, though it appears that he was not absent longer than five minutes.  Upon this ground a motion for a new trial was made and overruled, which is alleged as error.

It is undoubtedly true that every person tried for a felony has the right to be present at the trial, and at the whole of it. And if he should be deprived of this right without his consent, it would be erroneous.  R. S., chap. 179, sec. 7; *Rose vs. The State*, 20 Ohio, 31; *People vs. Perkins*, 1 Wend., 91.

In the case of *Prine vs. Commonwealth*, 18 Pa. St., 103, it was held that the prisoner's counsel could not waive his right to be present.  Whether the prisoner himself, if once personally present, could waive it or not, they did not decide, as no such case was presented.  Yet as they declared the right to be "inalienable," the inference might be drawn that they supposed the prisoner even could not part with it.  But it is unnecessary to go to that length, or to determine—although the statute provides that no person shall be tried for a felony without being present at the trial—whether that is not a right secured to him, which, like many other important rights given by law, the party may waive, if he deliberately and with full knowledge of his right sees fit to do so.  It is clear that he may

waive any trial at all. He may plead guilty, and thus subject himself to the worst results which might follow a trial. And if he can do this, it would be difficult to reconcile with the rule which allows it any reasoning that would prevent him from waiving any mere privilege on the trial that was design-ed only to aid him in shielding himself from those results. Of course this reasoning would not be applicable to any right where a refusal to waive it might possibly prejudice his case, so that he might be held to act in some degree under constraint. Such has been held to be the case where, during the progress of a trial, a juror has been taken sick, or from other cause been unable to proceed. It has been said that the prisoner in such a case ought not to be put upon his election whether he would waive his right to a full jury and allow the remainder to try him, because he might be induced by an undue desire to pro-pitiate the remainder by manifesting confidence in them, to waive a right which he otherwise would not. But however this may be, there does not seem to be any sound reasoning by which a prisoner indicted for felony, having the privilege of being present at the trial, and being in a condition to exer-cise it, may not voluntarily waive the right, so far at least as to be temporarily absent from the room during some portion of the progress of the trial. It has accordingly been held in sev-eral cases, the doctrine of which seems to us reasonable, that he may waive such right. *Wilson vs. The State*, 2 Ohio St., 319; *McCorkle vs. The State*, 14 Ind., 39; *State vs. Wamire*, 16 id., 357.

Such being our conclusion, we think it must be assumed upon this record that the prisoner was voluntarily absent at the moment the verdict was received. He had been present during the trial; he was present when the jury came in with their verdict. It is not probable that the court would order him removed during the short time required to write the ver-dict, and it does not even appear whether he was in custody or on bail. The burden, therefore, being on the prisoner to show

error, he should make it appear that he was deprived of the right to be present, not merely that he was not present. For the latter fact is entirely consistent with the supposition that he may have voluntarily left the room at the time the verdict was received, without the knowledge even of the court or the officer. This fact, then, is no ground for reversal.

The indictment was for larceny, in stealing several treasury notes. On the trial, a witness was called to describe the notes, and as she could not describe them without refreshing her recollection, she was allowed to use for that purpose a memorandum which had been made by another person at the time the notes were found, but for the making of which the witness furnished the paper and read the numbers of the notes to the other person, who wrote them down. The record is not very specific or clear in respect to what the witness said about the memorandum, though we understand it as meaning that she testified positively that such a memorandum was made, and that she believed the one presented to her to be the same one. The bill of exceptions then states that "the witness testified to the description of the treasury notes from the memorandum, although she had no recollection of the description without the aid of the memorandum;" and it is claimed that this evidence was erroneously admitted.

It is claimed by the prisoner's counsel that the witness could not be allowed to refresh her recollection by a memorandum not made by herself. But however this may be in cases where it is designed to use or read the memorandum in connection with the testimony of the witness, the latter not being able, even after refreshing his memory, to retain any present recollection of the facts stated, but only to say generally that he knew at the time that they were correctly stated, such clearly is not the rule where the witness, after seeing the memorandum, is able, by its aid, to recall the facts and testify to them as a matter of recollection. In such cases it matters not whether the memorandum was made by the witness or another, "for

it is his recollection and not the memorandum which is the evidence." 1 Greenleaf on Ev., § 436; 2 Phil. on Ev. (C. & H.'s Notes), 922, 923; *Dorsey vs. Gassoway*, 2 Har. & John., 410; *Coffin vs. Vincent*, 12 Cush. (Mass.), 98. Such we understand to have been the case here. For we understand the statement in the bill of exceptions above quoted to mean that the witness, after using the memorandum, testified to the description of the notes from her recollection, although she could not have recollected it unless her memory had been thus aided. This evidence was, therefore, properly received.

Several exceptions were taken to the charge. And the counsel for the prisoner have criticized its general character, as partaking more of the nature of an argument against the accused than of an appropriate charge by the court. There may be some ground for such a criticism. But without attempting to determine whether there is anything in its general character to justify a reversal of the judgment, we think there is one portion in which the judge encroached so directly upon the province of the jury that the judgment ought not to stand. Certain notes, corresponding in description with those stolen, had been found at a place where it was claimed the prisoner had concealed them. The identity of these notes with the ones stolen was a most essential fact in the chain of evidence by which he was to be convicted. The judge charged the jury that " one twenty dollar note was positively identified." And then he proceeded from that as a starting point to argue quite forcibly in favor of the identity of the others. Now what the evidence was in respect to the identity of this one note, the bill of exceptions does not disclose. Yet, whatever it was, it was a question of fact for the jury. And although there may have been positive evidence tending to identify it, yet it is for the jury to pass upon that evidence, and not for the judge. To say that a fact is positively established, and that there is positive evidence tending to establish it, are different propositions. In the former case, the jury take the fact as a starting

point. In the latter, they consider the positive evidence and pass upon its credibility and effect. This portion of the charge seems, therefore, liable to the objection indicated in the exception taken to it, that it stated the effect of the evidence, instead of the evidence itself.

While courts may present to the minds of jurors, in criminal cases, such considerations as are appropriate to aid them in the proper and legal discharge of their duties, they must be scrupulously careful to leave to the jury the full exercise of its own functions. And as this was not done in this instance, the judgment must be reversed.