The opinion of the Court was delivered by
Bermudez, C. J.
This defendant was prosecuted and tried for murder. He was convicted of manslaughter.
From the judgment, sentencing him to five years imprisonment at ' hard labor in the State penitentiary, he has appealed.
He complains:
1. That the District Court has erred in overruling his motion to quash the general venire and in refusing that for a new trial.
2. That the Record does not show that he was present during the trial of the last motion.
L
The challenge to the array was based on the ground that the general venire was not completed from all the citizens qualified to serve as jurors) that the names were selected from a list of registered voters $ *119 tliat tlie names of the j urors were not written on separate slips of paper, with the. number of the ward or place of residence of the juror, by the clerk of the court.
The motion to quash the venire does not contain any charge that some fraud has been practiced, or some great wrong committed in the drawing and summoning of the jury, that would work a great and irreparable injury to the accused.
Under the rulings of this Court, based on Sec. 10 of Act 44, of 1877, the motion to quash is wholly deficient and cannot prevail. See State vs. Dozier al. Lobster; State vs. Watkins Smith, 33 A., p. 1414, and authorities therein referred to ; also, 32 A. 36 ; 30 A. 884; 31 A. 379.
II.
The main grounds urged for a new trial are, that the jury were permitted to take with them, during their deliberations, the written testimony taken at the inquest, which was not in evidence, a certificate of death of the coroner, dated after the inquest and forming no part of it; that after the evidence had been closed on both sides, the jury were allowed to occupy the court room, the table in which was covered with law books, the jury having tree access thereto.
We have examined the testimony offered in the motion for a new trial, and which is annexed to the bill of exception taken to the refusal of the Judge to grant one, and we have also considered the statements in the bill itself.
From the whole, we gather : that the inquest and the coroner’s certificate, which were fastened together, had been read, without objection, to the jury; that immediately thereafter, the Judge charged the jury with emphasis, that the inquest only proved the death ; that the evidence on the inquest was not read; that there were law books in the room to which the jury retired; that those books continued therein until after they had deliberated; that they were afterwards found scattered;' that when the jury returned into court with their verdict, the bundle of papers, or Record, which they brought in, was found to contain the evidence at the inquest, the inquest and the certificate.
Under that state of facts, was the accused entitled to a new trial 9
The rule is, that when the jury retire to deliberate, improperly talcing out with them a paper, it should be no ground for a new trial, unless it appear that it was examined and that the accused was thereby prejudiced. 29 Iowa 295; 6 A. 554.
The rule likewise is, that the jury should not be permitted to take with them any jportion of the written evidence in the case, but that there exists no objection to their taking the whole of the evidence; 61 111. 365 ; but the rule is not without exceptions. 29 A. 715.
It was held that it is no error to permit the jury, on a trial for murder, *120 to take with them papers which had been commented upon during the trial. 76 Penn. St. 340; 5 Binny’s Rep. Penn. 239.
It was distinctly further ruled, that where it appeared that the testimony which was given at the coroner’s inquest, and which had not been offered in evidence on the trial, was accidentally taken to the jury room, it was no ground for a new trial. 10 Rich. 212.
In the present instance, there is nothing to show that only part ofthtevidenee at the inquest was taken out; that it was read hy any juror j that the jury was prejudiced thereby. It was inadvertently taken out by the jury with the Record, attached as it was to the inquest and to the coroner’s certificate, which had been read to the jury. The District Judge had emphatically charged the jury for the full protection of the. accused.
In State vs. Bradly, 6 A. 560, the Court said :
“ It is the duty of the court, and of their officers, to guard as far as possible against all irregularities in their proceedings. Still they will occur, because tribunals of justice, like all human institutions, are imperfect. Some irregularities are of such a gross character that a prepucial effect may be presumed. We do not think the one complained of was of that character. If, by any means, it could be shown that the affidavit had produced an improper influence on the jury in making up their verdict, it would afford sufficient ground for granting a new trial. But we will not presume it because it is barely possible. We should regard jurors as rational men, capable of performing the high duties which the Constitution imposes upon them. The Constitution and1 laws charge them to judge of the issues upon which life, liberty and property, depend. The law presumes them to possess the capacity and integrity to perform those duties correctly, and that they will not be swerved from their performance by improper influences, and we will not presume or decide the contrary, until it appears from proof or necessarily results from gross misconduct.”
The evidence further fails to show, that the books in the jury room were examined and read. It was no doubt improper to permit them there to remain, without the authority of the court, or the consent of the parties ; but, in the absence of direct testimony to establish that they were looked into and read, that is no ground for a new trial. 13 Ind. 434 ; 11 Ohio 114; 32 A. 842, and authorities referred to.
The motion for a new trial was properly overruled.
III.
The assignment of errors filed here calls our attention to the silence of the transcript, relative to the presence of the accused during the trial of his motion for a new trial, and it is insisted that this is an error, *121 patent on tlie face of tli© Record, which demands a remanding of the case.
The Constitutions of most of the States of the Union incorporate the old common law principle, that the accused in criminal cases shall have a right to meet the witnesses against him, face to face. Ours provides that he shall enjoy the right to be confronted with the .witnesses against him. Const. 1879, Art. 8.
However sacred this constitutional right may be, it has not been construed to be so absolute in character as to require the constant presence of the defendant at each and every proceeding in his case. It has been construed as entitling him to be present at the arraignment, trial, charge verdict and sentence, but we have been shown no precedent in this country where the accused is entitled to be present at any other proceeding. It is not to our knowledge, from the books or otherwise, that the defendant has ever claimed, or been recognized, the right to be present, when therein represented by counsel, in the court of last resort.
In 32 A. 500, we said :
“ While the law, in its tenderness for one in its custody, charged with a grave offense, may not from this consideration dispense with the personal presence of the accused in all the important material stages of the trial, lest he might possibly suffer some injury from his absence, it is not now required that he should be personally present at each any every step and proceeding connected with the case of minor significance and importance.” V. Dougherty vs. Commonwealth, 69 Penn.. St. 286.
We will add that such is the case, particularly on the trial by counsel of a motion for a new trial, which necessarily admits a previous trial, and which is not another trial in itself, and during which no witness is or can be heard to test the guilt or innocence of the accused, on the charge against him.
It has been held that the defendant’s voluntary absence, during part of a trial on an indictment for a felony, was no ground for reversing the sentence against him. 17 Cal. 389; 17 Wis. 675 ; 2 Mont. 239 ; 7 Ohio pp. 1, 180; 16 Ind. 357; 8 R. 554, 562.
Tire same ruling has been made touching Ms compulsory removal from the court room, where Ms action is such as to make it impossible to proceed with the trial, and he is permitted in an adjoining room .to communicate with Ms counsel.. 6 Blaich. 464 ; 98 U. S., p. 158 (4).
Judges, however, have sometimes preferred enduring an irritating defendant, where a plea of insanity was interposed, and the accused claimed the right of representing himself.
In his work on Criminal Procedure, Bishop says, that between the-verdict and the sentence, it is not necessary, though highly proper, *122 that the prisoner be present in court, when the offense charged is a capital one. Yol. 3, Sees. 276,275.
The reasons for which formerly the personal attendance of the accused was required, are well given by Manning, C. J., in 30 A. 1155, and those for which it is not deemed indispensable in certain cases specified, are likewise stated in 32 A. 558.
In motions in arrest of judgment and in error, the old English practice was to require the attendance of the defendant, but in our sister States, as well as in ours, this presence has not in practice been enforced. 18 Mo. 319 ; 2 Dutcher 464, 601; 1 Parker C. R. 360; Wharton on Cr. L., No. 2998, § 2, and notes.
We do not consider that the defendant was entitled to be personally present at the trial by his counsel on the motion for a new trial.
The judgment appealed from is therefore affirmed with costs.
Mr. Justice Todd dissents.