| 92 | 505 |
|----|-----|
| 92 | 628 |

HAZER, Administrator, Respondent, vs. STREICH, Appellant.

*February 18 — March 10, 1896.*

*Evidence: Contracts: Memorandum in account book: Witnesses: Hus-*
*band and wife: Agency: Refreshing recollection: Admissions:*
*Transaction with person since deceased.*

1. The fact that a memorandum of a contract of sale was written in
   the vendee's ledger by his bookkeeper, at his direction and in the
   presence of both parties, does not render it admissible to prove
   the terms of the contract.
2. The fact that the vendee's wife, as his bookkeeper, wrote such
   memorandum in his ledger and read it over in the presence of the
   parties, did not render her competent to testify to the terms of the

Hazer vs. Streich.

contract, where she did not, as her husband's agent, take any part in making it.

3. A witness who had testified that he heard a contract of sale made; that the vendee dictated it to his wife, and she wrote it down in a book at his direction, in the presence of both parties, and then read it to them; and that he stood where he could see it, though not close enough to read it,— should have been allowed to identify the writing in the book, and, if he could identify it, might use it to refresh his recollection.

4. A memorandum of a contract so made and read over to the parties without dissent is, if properly identified, substantive evidence, as an admission of the parties.

5. In an action for the price of goods sold to defendant by plaintiff's intestate the defendant, as a witness, was asked if he ever notified the vendor that the goods were not in accordance with the contract. *Held*, that an objection on the ground that the question called for a personal transaction with a deceased person was properly sustained, in the absence of any suggestion that the notification was by letter.

APPEAL from a judgment of the county court of Winnebago county: C. D. CLEVELAND, Judge. *Reversed.*

The plaintiff sued to recover the balance of the purchase price of a quantity of lumber sold and delivered by his intestate to the defendant. The defendant answered, claiming that he purchased the lumber at specified prices but on the agreement to pay for the same in wagons, carts, sleighs, etc., at market prices, whenever plaintiff should order them, and that he had been at all times ready to pay for the same in that way, but that plaintiff had never requested or ordered such wagons, carts, etc., to be delivered. It was also claimed by the answer that a large quantity of the lumber was of poor quality; that a part of that ordered had not been delivered; and a counterclaim for damages on account of the poor quality of the lumber was also interposed. The plaintiff, by reply, denied the allegations of the counterclaim, and alleged that the lumber was sold after examination and inspection by the defendant.

Upon the trial, the plaintiff made a *prima facie* case, and

rested; whereupon the defendant was called, and testified that he was a manufacturer of wagons, sleighs, carts, etc., and that in 1892 and 1893 his wife, Louisa Streich, was his book-keeper, and had entire charge of his books and accounts; and he produced a ledger which he identified as a ledger used by her in 1892, and a book of original entry. Louisa Streich was then called, and also identified the book, and opened it at page 476, whereon was account of Isaac Brown, the plaintiff's intestate. Her attention was then called to the following memorandum, at the head of the page: "Isaac Brown, Northport, Wis. 1892, Sept. 5. Agreement made with Isaac Brown, September 5, 1892: I am to take his white oak, $2\frac{1}{4}$, $2\frac{1}{2}$, 3, $3\frac{1}{2}$, and 4 in. first and second clear at Northport, at 22.50, delivered, in exchange for wagons, logging sleighs, dump carts, cutters, and so on. The 2 in. com. oak plank at 11.00 per M." And she stated that she was present when it was made; that it was made at the time of its date; that her husband, Isaac Brown, and one Mathwig, were also present. The memorandum was then offered in evidence, and excluded. Mrs. Streich then testified that she made the entry by direction of her husband, and that she read it over in the presence of Brown, Mathwig, and her husband; and she was then asked to state what the contract was between her husband and Mr. Brown. An objection to this question was also sustained, on the ground that she was incompetent to testify, being the wife of the defendant. John Mathwig was then called, and testified that he saw Isaac Brown, *Gabriel Streich*, and Mrs. Streich together on the 5th of September, 1892, and heard the conversation between Brown and *Streich* in reference to the purchase of lumber; that there was a bargain made between *Streich* and Brown that *Streich* should get lumber from Brown; that he didn't know what the language of the bargain was, but that he remembered that *Streich* dictated the bargain to his wife, and told her to write it down in the book, in the presence

Hazer vs. Streich.

of Mr. Brown, and that she did write it down, and that she read it to all the parties after she wrote it down; that the bargain was that Brown was to furnish the lumber, and *Streich* was to pay him with work manufactured in his shop; that he stood where he could see Mrs. Streich write down the bargain, but that he wasn't close enough to read it. Thereupon witness was asked to look at the book and see if that was the memorandum she made at the time. A general objection to this question was sustained, and the defendant excepted.

At the close of the evidence, a verdict was rendered for the plaintiff for $752.55, and from judgment thereon the defendant has appealed.

For the appellant there was a brief by *Hume & Oellerich,* and oral argument by *John W. Hume.*

For the respondent there was a brief by *Phillips & Hicks,* and oral argument by *M. C. Phillips.*

WINSLOW, J. The important question in the case is whether the memorandum of the contract made by Mrs. Streich was admissible in evidence. It was first offered in evidence during the examination of Mrs. Streich, and we are clearly of opinion that it was not then admissible. All that had then appeared in reference to it was that Mrs. Streich was her husband's bookkeeper, and that she had written it down in the ledger at his direction, in presence of the parties. It is very clear that it was not admissible as a book of account under the statute, because it is neither a charge nor a credit nor an entry that properly belongs to an account. A memorandum otherwise incompetent cannot be made admissible by being written in a book of account.

After this offer was excluded, Mrs. Streich testified that she read it over in the presence of the parties, and then she was asked if she could tell what the contract was. An objection to this question was sustained, on the ground that

she was the wife of the defendant, and incompetent to an-
swer this question on that account. This ruling, also, we
regard as correct. She was only competent to testify as to
those matters in which she acted as the agent of her hus-
band. She had heard the contract made, but she had not
made it, nor taken any part in making it. Had she made
no memorandum of it, but simply listened to it, we do not
suppose it would be claimed that she could testify as to its
terms. This, clearly, would not be testimony to any fact
or transaction within the scope of her agency; and we can-
not see how the fact that she made a memorandum of it
makes competent that which was before incompetent.

A different question was presented, however, when the
entry was offered in connection with the evidence of the
witness Mathwig. This witness was entirely competent to
testify as to anything that took place. He testified that he
heard the contract made; that *Mr. Streich* dictated it to his
wife; and that she wrote it down at his direction, in pres-
ence of both parties; that she read it after she wrote it
down; and that he stood where he could see it, though not
close enough to read it. He was then asked to look at the
memorandum, and see if it was the memorandum which she
made at the time; and an objection to this question was sus-
tained, because it was not his memorandum and he did not
read it. This was error. It does not follow that, because
he did not read the memorandum, he could not identify it.
He could certainly use the memorandum to refresh his rec-
ollection, though not made by himself, if he could identify
it upon inspection and testify that he recollected it as the
one made at the time of the transactions. *Hill v. State,* 17
Wis. 675. We think, also, in the present case, that, if he
could so identify it, the memorandum would itself become
substantive evidence. It appeared by Mathwig's testimony
that it was read over by Mrs. Streich, in the presence of
both parties, at the time, and without dissent, so far as ap-

pears.  By this evidence it became, if  properly identified,. not the mere  memorandum  of  a witness, but an  admission of the parties, and entitled to be  introduced as such.    It is very similar to the written  memorandum introduced in evidence  in  the  case  of *Eby v. Eby's Assignee,* 5 Pa. St. 435. The reasoning in that case seems quite satisfactory and conclusive on the question.

Another  question is raised as to a ruling on testimony, on which we think the court was certainly right.    The defendant, *Streich,* was on the stand as a witness, and was asked if he ever notified Mr. Brown that the lumber was not in accordance with  the contract.    This was objected to, on the ground that Mr. Brown was deceased, and that the question called for  a  personal transaction with  a  deceased person. This objection was sustained practically on the ground, as stated by the court, that it called for a conversation with Mr. Brown.    It is now said that the notification *may* have been by letter.  If such was the method of notification, the question should have been so framed, especially after the ruling of the court, when it became apparent that the court had interpreted it as calling for a personal transaction.

*By the Court.*— Judgment reversed, and action remanded for a new trial.