R. H. DAVIS, Administrator, Respondent, v. J. R. McCLELLAND and E. E. DENHAM, Appellants.

Springfield Court of Appeals, November 14, 1914.

1. EVIDENCE: Rule as to Book Accounts: Applicable to Professions. Action by partnership of lawyers on an account. The rule that books of original entry which were kept in regular course of business are admissible even in favor of the party by whom they are kept extends to those in the practice of the legal profession.

2. ———: Book Accounts: Memorandum as to Contract for Future Services. Action by partnership of lawyers on account. An entry in the firm account book was permitted in evidence which showed a charge for services for one year from the date of the entry, in the future. *Held*, error to admit the entry as it related to a contract of future performance and was not a record of services rendered.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. David E. Blair*, Judge.

REVERSED AND REMANDED.

*R. M. Sheppard* for appellants.

(1) Books of account to be received in evidence must be a registry of business actually done; they are inadmissible to prove the terms or contents of a special agreement. 3 Jones on Evidence, 568; 17 Cyc. 380; Daum v. Neumeister, 2 Mo. App. 597; Batcheller v. Whittier, 107 Pac. 141. (2) Another objection to the admission of this book entry is, that it was not an entry or book account of any work or labor performed, or of goods sold and delivered, but purported to be a contract for work and services which were to be performed in the future. Cooper v. Morrell, 4 Yeates, 341; Ream v. Snodgrass, 2 Grant, 379; Alexander v. Hoffman, 5 S. W. 382; Shoemaker v. Kellog, 1 Jones, 310.

*W. J. Owen* and *R. H. Davis* for respondent.

(1) Entries in books of account kept by attorneys, physicians, and other professional men, if they have a regular and daily routine in their business involving the recording of entries of professional business in books of account, are admissible. 1 Elliott on Evidence, Sec. 463; Codman v. Caldwell, 31 Me. 560; Bay v. Cook, 22 N. J. 343; Bass v. Gobert, 113 Ga. 262, 38 S. E. 834; 17 Cyc. 369; Ganahe v. Shore, 24 Ga. 17; Fulkerson v. Long, 63 Mo. App. 268; Borgess Inv. Co. v. Vett, 142 Mo. 560. (2) If the evidence does not show that the entry was made contemporaneously with the making of the alleged contract of employment, it was the duty of defendants to make the objection in the trial court, if they desired to raise the question. An objection not made in the trial court will not be entertained when made for the first time in the appellate court.

FARRINGTON, J.—Action by a partnership of lawyers begun in a justice's court by filing a statement

of account. One of the partners died before trial, and the survivor was appointed administrator of the part- nership estate. A jury found for defendants. After plaintiff's appeal to the circuit court there was a mis- trial, the jury failing to agree, but at a subsequent trial nine jurors signed a verdict for $150, the total amount claimed. Defendants have now appealed.

The only errors assigned for reversal go to the action of the court in admitting and rejecting evidence.

Plaintiff Davis testified that the firm of Clay & Davis kept a regular set of books in their business and that he kept the book accounts—that he was the bookkeeper of the firm; that Mr. Clay never made a single entry on the books; that he (Davis) kept a jour- nal daybook, and from that book he posted to the ledger account; that whenever any business was transacted, either by himself or Mr. Clay, or whenever any changes were to be made or credits given, he (Davis) attended to it on the books. He testified that he made an en- try on April 1, 1912, on their journal daybook for the year 1912, at page 37 from information he obtained from Mr. Clay, and that this entry was made in the regular course of business. Although asked at two different times to state what the entry was, the wit- ness never did so, but at the conclusion of his testi- mony, the book and page having been identified, the entry was offered in evidence. Defendants' objection was as follows: "Defendants object to this for the reason that it would be purely hearsay as to these de- fendants, would be a self-serving declaration on the part of the plaintiffs and for the further reason that it is not a proper subject of book account, doesn't un- dertake to be an account of merchandise sold or serv- ices rendered in the ordinary course of business but undertakes to contain and embody within it the terms and provisions of a contract which is to be performed in the future; no pretense or claim th\t it is for serv- ices that had been rendered or any that were rendered

at that time. It shows upon its face it was for services, if any, that were to be rendered in the future and is not the subject of book account." This was overruled and exception saved, whereupon the entry was offered, as follows:

"April 1, 1912.

"McClelland & Denham to one year's service from April 1, 1912, $150.

"To look after licenses, J. P. cases and little circuit court cases, but cases of serious import to be paid for additional."

Mr. Davis had stated in cross-examination that he never had anything to do with the making of the alleged contract, and that if there was any contract with the defendants, it was made by Mr. Clay.

The only other evidence given was by Mr. Davis concerning an alleged conversation he had one night in defendants' saloon. He said that this occurred about the time defendant McClelland was supposed to have sold out his interest in the saloon; that McClelland invited him in to take a drink and spoke to him about the account; that "he was on a trade or about to sell out, and wanted to know if I would be willing to cancel our contract with the firm. I told him yes if they would pay up we would be willing to cancel the contract at that time. It had run something like six months is my recollection." This suit was filed on April 9, 1913. Mr. Clay died in May, 1913.

Defendants were not permitted to testify concerning the alleged contract because of the death of Mr. Clay. The court refused to permit them to show by Mr. Davis, as a circumstance that there was no such contract entered into by defendants, that the witness did not render any services to defendants during the year in question and did not know of Mr. Clay rendering them any service during the same period. The court also refused to allow defendants to show that they actually did employ other attorneys during this

period to look after a license and other attorneys to represent them in a matter of business for the firm, and still another attorney to represent them in preparing contracts.

The foregoing is a summary of the evidence that was before the jury. The importance of the book entry to the plaintiff's case is at once apparent.

In the old case of Ward v. Powel, 3 Har. (Del.) 379, it was held that a subscription to a paper cannot be proved by a book of original entries, but, the subscription being proved, the price may become a proper subject of book charge.

In the case of Horton v. Wood, 66 Hun, 632, 21 N. Y. Supp. 178, in an action for commissions due plaintiff for services as canvasser, on an issue as to an oral contract made with plaintiff by defendant's manager, who had since died, it was held that an entry of the contract in a book, made by the manager at the time, but which was not read or shown to plaintiff, was inadmissible to show the terms of the contract. The court in that case said: "But no authority is cited to show that a written statement of the facts in a disputed cause can be proved after the death of the writer simply because entered in a book."

In a note in 52 L. R. A. at page 585 we find this statement with authorities cited in support: "Books of original entries are evidence of goods sold and delivered when the entry was made at the time of the delivery of the goods, or when they were set apart for delivery; but if the entry was made before the goods were delivered or set apart for delivery, the books are not such evidence."

In Hart v. Livingston, 29 Iowa, 217, the plaintiff offered the following entry appearing in a book of original entries: "Bo't of Livingstons 25 fat hogs, 12 head delivered immediately, balance when fattened, pd. $15." The Supreme Court in holding that the entry was inadmissible, said: "The entry was rather

of a contract or agreement, made by the party himself in his own book, and would have been just as competent if made upon separate slips of paper, as when found in this book.''

In the case of Batcheller v. Whittier (Cal.), 107 Pac. 141, the action was to recover compensation for legal services rendered in successfully prosecuting an action involving real estate. The plaintiff offered an account book containing an entry ''agreed fee to be one-half.'' The court said that such an entry is a mere memorandum of a special contract and had no proper place in an account book, citing 2 Wigmore on Ev., sec. 1541.

In 17 Cyc. 380, the rule is declared that books of account are inadmissible to prove the terms or contents of a special agreement, citing the memorandum opinion of Daum v. Neumeister, 2 Mo. App. 597. That memorandum opinion is as follows: ''A party cannot prove a special contract for services by entries in his own book, coupled with his testimony that he made all the entries in his business from day to day, and that, at the time he made said contract, he entered the same in said book.''

The foregoing citations are given as stating what we conceive to be the law on the subject in hand, but we are not to be considered as adopting everything said in the opinions.

It is plain that the entry in the journal daybook was made a part of plaintiff's case to support the contention that a contract was made and that it gave rise to certain obligations. It was manifestly not offered for the purpose of proving the value of services rendered, because none had been rendered when the entry was made, and if plaintiff's theory is correct the money would be due even though defendants did not require any service.

The early rule in this State was that a plaintiff's book of original entries, kept by himself, was not ad-

missible, with or without his suppletory oath (Hiss-
rick v. McPherson, 20 Mo. 310), and that rule was
followed in several reported cases, but since the de-
cision was rendered in Anchor Milling Co. v. Walsh,
108 Mo. 277, 18 S. W. 904, it is clearly the law that
books of original entry, shown to have been kept in
the regular course of business, are admissible in evi-
dence, even in favor of the party by whom they are
kept. Although no case appears to have reached the
appellate courts of this State wherein an attorney of-
fered his account book of original entries, kept in the
usual course of business, the trend of our decisions
leads us to believe that the rule extends to the books
of all persons practicing in a regular craft or occu-
pation which makes it necessary for books to be kept
as a record. [See 17 Cyc. 369.] It may be said that
the case of Daum v. Neumeister, supra, was decided
before the change occurred in the Missouri rulings,
but if the memorandum of the opinion is a correct
statement of the decision, we think it is still good law.
In our recent case of Ranney v. Lewis, 167 S. W. 601,
the action was by a lawyer (Ranney) to recover from
defendant (Lewis) the alleged value of legal services.
The plaintiff testified that as soon as defendant left
the office after engaging him, he made a memoran-
dum in his office docket of the amount he told defend-
ant he would charge, explaining in his testimony that
in this docket he kept a list of the different cases he
was employed in. Later plaintiff offered the entry
in evidence, and claimed in this court it should have
been admitted as part of the *res gestae*. We held that
the entry was inadmissible because made in the ab-
sence of the defendant and there was no evidence that
he ever saw it. It is true, that was not a case in-
volving the "account book" rule.

Respondent has cited Codman v. Caldwell, 31 Me.
560; Bay v. Cook, 22 N. J. L. 343; Bass v. Gobert, 113
Ga. 262, 38 S. E. 834, and 17 Cyc. 369, footnote 87.

.None of these cases, nor any of those cited in the foot-note just mentioned, are where the entry sought to be introduced was one made before the services were performed. The case of Codman v. Caldwell, 31 Me. 560, fails to show just when the work done was performed as to the time of the entry in the book. But the case of Dwinel v. Pottle, 31 Me. 167, expressly holds that where a party relies upon his own book and suppletory oath, as evidence of the performance of services or the sale of articles, it is indispensable, in order to a recovery, that he should testify that the services were performed or the articles delivered.

The principle that we think controls this case is stated in Jones on Evidence (2 Ed.), sec. 574, as follows: "The book to be admissible must be a *record of things actually done,* and not of orders, executory contracts and things to be done subsequently to the entry," citing Hart v. Livingston, supra; Whisler v. Drake, 35 Iowa, 103; J. Snow Hardware Co. v. Loveman, 131 Ala. 221, 31 So. 19; and Hazer v. Streich, 92 Wis. 505, 66 N. W. 720. To the same effect is 2 Wigmore on Evidence, sec. 1541, and 9 Am. & Eng. Ency. Law, p. 933—citing a number of cases, among others, Bailey v. Harvey, 60 N. H. 152, which holds that book accounts are incompetent to prove the performance of a special contract, yet after the goods are delivered under the contract the entry of charge then made is competent evidence to prove the delivery of the goods and their amount.

The entry admitted in evidence in the instant case shows upon its face that the services contemplated were to be performed in the future—after April 1st, the date of the entry—and that no money was due the law firm until three months after the entry was made. This entry, although in a book regularly kept for the accounts of the firm, was not such an entry of a book account as is contemplated in the shopbook exception to the hearsay rule, but was nothing more than an

entry of a private memorandum of a special agreement concerning which there is no evidence in the record that the defendants ever knew or heard of the same having been made.

There is no showing or attempt to show that any services of any kind were ever performed by this law firm for defendants during the time the alleged contract was supposed to be in force.

We must hold that it was error to permit the memorandum to be introduced in evidence. The judgment is reversed and the cause remanded. *Robertson; P. J.,* and *Sturgis, J.,* concur.